MICHAEL FAILLACE & ASSOCIATES, P.C.
MICHAEL FAILLACE [MF-8436]
60 EAST 42ND STREET, SUITE 4510
NEW YORK, NEW YORK 10165
(212) 317-1200
ATTORNEYS FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
ERICK OSORIO, IVAN MORALES SOLANO, and
TITO ALVAREZ MARTINEZ, *individually and on*
*behalf of others similarly situated,*

*Plaintiffs,*

-against-

TASTE OF THAI INC. (d/b/a THREE E TASTE OF
THAI), 3E FOOD INC. (d/b/a THREE E TASTE OF
THAI), BENJAMAS SURATSOMBAT,
PORNTHIWA SURATSOMBAT, PAULA
SURATSOMBAT, SIRA AJALANON, and
MOOHAM AJALANON,

*Defendants.*

--------------------------------------------------------------X

**17-cv-05664-JBW-JO**

**FIRST AMENDED**
**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C.  § 216(b)**

**ECF Case**

    Erick Osorio, Ivan Morales Solano, and Tito Alvarez Martinez ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their attorneys, Michael Faillace & Associates, P.C., upon information and belief, and as against each of Defendants Taste of Thai Inc. (d/b/a Three E Taste of Thai), 3E Food Inc. (d/b/a Three E Taste of Thai) ("Defendant Corporations"), and Individual Defendants Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon (collectively, "Defendants"), allege as follows:

**<u>NATURE OF ACTION</u>**

1.      Plaintiffs are employees of Defendants Taste of Thai Inc., 3E Food Inc., Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon (collectively, "Defendants"), who owned and operated "Three E Taste of Thai".

2.      Three E Taste of Thai was a Thai restaurant owned by Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon, located at 3416 Broadway, Astoria, NY 11103.

3.      Upon information and belief, Defendants Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon served as owners, managers, principals or agents of Defendant Corporations and through these corporate entities operated the Thai restaurant as a joint or unified enterprise.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiffs were ostensibly employed as delivery workers, but were required to spend several hours each day performing non-tipped duties unrelated to delivery work, including preparing food, cutting meats and vegetables, cleaning shrimp and seafood, preparing rice, stocking deliveries in the basement, washing dishes, taking out the trash, and cleaning restrooms (hereinafter non-tip, non-delivery duties).

6.       Plaintiffs regularly worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for any of the hours that they worked.

7.      Rather, Defendants failed to maintain accurate records of hours worked and failed to pay Plaintiffs appropriately for any hours worked.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

9.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties included a significant amount of time spent performing non-delivery, non-tipped functions such as those alleged above.

10.     Regardless, throughout Plaintiffs' employment, Defendants paid Plaintiffs at a rate that is lower than, or at, the tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever is less in each day) (12 N.Y.C.R.R. § 146).

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credit rate (which they still failed to do) by designating them as tipped employees instead of non-tipped employees.

13.     Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and others similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C.  § 201 *et seq.*  ("FLSA"), and for violations of the N.Y.  Lab. Law §§ 190 *et seq.*  and 650 *et seq.*  (the "NYLL"), the "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-2.2, 2.4), and the "spread of hours" and overtime wage

orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operated their business in this district, and Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiff Erick Osorio*

19.     Plaintiff Erick Osorio ("Plaintiff Osorio") is an adult individual residing in Queens County, New York. Plaintiff Osorio was employed by Defendants from approximately October 2009 until on or about October 21, 2017.

### *Plaintiff Ivan Morales Solano*

20.     Plaintiff Ivan Morales Solano ("Plaintiff Morales") is an adult individual residing in Queens County, New York. Plaintiff Morales was employed by Defendants from approximately November 2015 until on or about October 21, 2017.

*Plaintiff Tito Alvarez Martinez*

21.     Plaintiff Tito Alvarez Martinez ("Plaintiff Alvarez") is an adult individual residing in Queens County, New York. Plaintiff Alvarez was employed by Defendants from approximately September 2011 until on or about April 2015, from approximately May 2015 until on or about December 2015, and from approximately January 2017 until on or about October 21, 2017.

*Defendants*

22.     Defendants owned, operated and/or controlled a Thai restaurant at 3416 Broadway, Astoria, NY 11103 under the name of Three E Taste of Thai, at all times relevant to this complaint.

23.     Upon information and belief, Defendant Taste of Thai Inc. is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintained its principal place of business at 3416 Broadway, Astoria, NY 11103.

24.     Upon information and belief, Defendant 3E Food Inc. is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its service of process address at 42-04 Layton Street #413, Elmhurst, New York, 11373.

25.     Defendant Benjamas Suratsombat is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Benjamas Suratsombat is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Benjamas Suratsombat possesses or possessed operational

control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Benjamas Suratsombat determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

26.     Defendant Pornthiwa Suratsombat is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Pornthiwa Suratsombat is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Pornthiwa Suratsombat possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Pornthiwa Suratsombat determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

27.     Defendant Paula Suratsombat is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Paula Suratsombat is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Paula Suratsombat possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Paula Suratsombat determined the wages and compensation of employees, including Plaintiffs, has established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

28.     Defendant Sira Ajalanon is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Sira Ajalanon is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Sira Ajalanon possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Sira Ajalanon determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

29.     Defendant Mooham Ajalanon is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Mooham Ajalanon is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Mooham Ajalanon possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. Defendant Mooham Ajalanon determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

*Defendants Constitute Joint Employers*

30.     Defendants operated a Thai restaurant located at 3416 Broadway, Astoria, NY 11103.

31.      Individual Defendants Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon possessed operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

32.     Defendants were associated and joint employers, acted in the interest of each other with respect to employees, paid employees by the same method, and shared control over the employees.

33.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.     Upon information and belief, Individual Defendants Benjamas Suratsombat, Pornthiwa Suratsombat, Paula Suratsombat, Sira Ajalanon and Mooham Ajalanon operated Defendant Corporations as either alter egos of themselves, and/or failed to operate Defendant Corporations as entities legally separate and apart from their own selves, by, among other things:

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b)     defectively forming or maintaining Defendant Corporations, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

(c)     transferring assets and debts freely as between all Defendants;

(d)     operating Defendant Corporations for their own benefit as the sole or majority shareholders;

(e)     operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations or closely controlled entities;

(f)     intermingling assets and debts of their own with Defendant Corporations;

(g)     diminishing and/or transferring assets of Defendant Corporations to protect their own interests; and

(h)     other actions evincing a failure to adhere to the corporate form.

37.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

38.     Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.     In each year from 2011 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.     In fact, Plaintiffs repeatedly witnessed that the restaurant made approximately 150 deliveries daily, each at an average of $30.

41.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were sold in the Thai restaurant on a daily basis were produced outside of the State of New York.

*Individual Plaintiffs*

42.     Plaintiffs are former employees of Defendants who were ostensibly employed as delivery workers. However, they spent more than 20% of their work time performing the non-tipped, non-delivery duties described above.

43.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Erick Osorio*

44.     Plaintiff Osorio was an employee of Defendants, who was ostensibly employed as a delivery worker.

45.     However, Plaintiff Osorio spent over 20% of each work day performing the non-tipped duties outlined above.

46.     Plaintiff Osorio seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

47.     Plaintiff Osorio was employed by Defendants from approximately October 2009 until on or about October 21, 2017.

48.     Plaintiff Osorio regularly handled goods in interstate commerce, such as food, cleaning fluids and other supplies necessary to perform his duties that are produced outside of the State of New York.

49.     Plaintiff Osorio's work duties required neither discretion nor independent judgment.

50.     Throughout his employment with Defendants, Plaintiff Osorio regularly worked in excess of 40 hours per week.

51.     From approximately September 2011 until on or about November 2015, Plaintiff Osorio worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays through Thursdays, from approximately 11:00 a.m. until on or about 11:30 p.m. on Fridays, and from

approximately 12:00 p.m. until on or about 11:30 p.m. on Saturdays (typically 72 hours per week).

52.     From approximately December 2015 until on or about March 2016, Plaintiff Osorio worked from approximately 11:00 a.m. until on or about 11:00 p.m. seven days per week (typically 84 hours per week).

53.     From approximately April 2016 until on or about December 2016, Plaintiff Osorio worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays through Thursdays, from approximately 11:00 a.m. until on or about 11:30 p.m. on Fridays, and from approximately 12:00 p.m. until on or about 11:30 p.m. on Saturdays (typically 72 hours per week).

54.     From approximately January 2017 until on or about June 9, 2017, Plaintiff Osorio worked from approximately 11:30 a.m. until on or about 10:30 p.m. three days per week (typically 33 hours per week).

55.     From approximately June 12, 2017 until on or about October 21, 2017, Plaintiff Osorio worked from approximately 11:30 a.m. until on or about 11:00 p.m. Mondays through Thursdays (typically 46 hours per week).

56.     From approximately September 2011 until on or about July 2017, Defendants paid Plaintiff Osorio his wages in cash.

57.     From approximately August 2017 until on or about October 21, 2017, Defendants paid Plaintiff Osorio his wages in a combination of cash and check.

58.     From approximately September 2011 until on or about December 2013, defendants paid Plaintiff Osorio a fixed salary of $60 per day.

- 11 -

59.     From approximately January 2014 until on or about June 2015, defendants paid Plaintiff Osorio a fixed salary of $70 per day.

60.     From approximately July 2015 until on or about December 2016, defendants paid Plaintiff Osorio a fixed salary of $75 per day.

61.     From approximately January 2017 until on or about October 21, 2017, defendants paid Plaintiff Osorio a fixed salary of $80 per day.

62.     Plaintiff Osorio's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

63.     For example, until approximately December 2016, Defendants required Plaintiff Osorio to work an additional 40 minutes two Saturdays per month without any additional compensation.

64.     Prior to January 2017, Defendants did not grant Plaintiff Osorio a meal break or rest period of any kind.

65.     Plaintiff Osorio was never required to keep track of his time. However, he noticed that Defendants punched his card for him every day, though he did not know if the cards accurately reflected his actual hours worked.

66.     Defendants never provided Plaintiff Osorio with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

67.     However, Defendants required Plaintiff Osorio to sign payment slips without providing him with copies.

68.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Osorio regarding wages as required under the FLSA and NYLL.

69.     Plaintiff Osorio was never notified by the Defendants that his tips were included as an offset for wages.

70.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Osorio's wages.

71.     Defendants never provided Plaintiff Osorio with each payment of wages a statement of wages, as required by NYLL 195(3).

72.     Defendants never gave any notice to Plaintiff Osorio, in English or in Spanish (Plaintiff Osorio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

73.     Defendants required Plaintiff Osorio to purchase "tools of the trade" with his own funds—including five electric bicycles, one gas bicycle, and a chain and lock.

*Plaintiff Ivan Morales Solano*

74.     Plaintiff Morales was employed by Defendants from approximately November 2015 until on or about October 21, 2017.

75.     Plaintiff Morales was employed as a food preparer, dishwasher, and ostensibly as a delivery worker.

76.     However, Plaintiff Morales spent over 20% of each work day performing the non-tipped duties outlined above.

77.      Plaintiff Morales seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

78.     Plaintiff Morales regularly handled goods in interstate commerce, such as food, cleaning fluids and other supplies necessary to perform his duties that were produced outside of the State of New York.

79.     Plaintiff Morales' work duties required neither discretion nor independent judgment.

80.     Throughout his employment with Defendants, Plaintiff Morales regularly worked in excess of 40 hours per week.

81.     From approximately November 2015 until on or about October 2016, Plaintiff Morales worked from approximately 11:00 a.m. until on or about 12:00 a.m. to 12:30 a.m. six days a week (typically 78 to 81 hours per week).

82.     From approximately October 2016 until on or about October 21, 2017, Plaintiff Morales worked five days a week with a range of approximately 55 to 60 hours per week.

83.     From approximately November 2015 until on or about July 2017, Defendants paid Plaintiff Morales his wages in cash.

84.     From approximately August 2017 until on or about October 21, 2017, Defendants paid Plaintiff Morales his wages in a combination of cash and check.

85.     From approximately November 2015 until on or about October 2016, defendants paid Plaintiff Morales a fixed salary of $70 per day.

86.     From approximately October 2016 until on or about October 21, 2017, defendants paid Plaintiff Morales a fixed salary of $360 per week.

87.     Plaintiff Morales' pay never varied even when he was required to stay later or work a longer day than his usual schedule.

88.     For example, until approximately October 2016, Defendants required Plaintiff Morales to work an additional 30 minutes six days a week without any additional compensation.

89.     Prior to January 2017, Defendants did not grant Plaintiff Morales a meal break or rest period of any kind.

90.     Plaintiff Morales was never required to keep track of his time.

91.     Defendants never provided Plaintiff Morales with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

92.     However, Defendants required Plaintiff Morales to sign payment slips without providing him with copies.

93.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Morales regarding wages as required under the FLSA and NYLL.

94.     Plaintiff Morales was never notified by the Defendants that his tips were included as an offset for wages.

95.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Morales' wages.

96.     Defendants never provided Plaintiff Morales with each payment of wages a statement of wages, as required by NYLL 195(3).

97.     Defendants never gave any notice to Plaintiff Morales, in English or in Spanish (Plaintiff Morales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98.     Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including three scooters, two bicycles, and $2,000 for bike supplies and maintenance.

*Plaintiff Tito Alvarez Martinez*

99.     Plaintiff Alvarez was employed by Defendants from approximately September 2011 until on or about April 2015, from approximately May 2015 until on or about December 2015, and from approximately January 2017 until on or about October 21, 2017.

100.    Plaintiff Alvarez was employed as a food preparer and ostensibly as a delivery worker.

101.    However, Plaintiff Alvarez spent over 20% of each work day performing the non-tipped duties outlined above.

102.     Plaintiff Alvarez seeks to represent a class of similarly situated individuals under 29 U.S.C.  § 216(b).

103.    Plaintiff Alvarez regularly handled goods in interstate commerce, such as food and other supplies necessary to perform his duties that were produced outside of the State of New York.

104.    Plaintiff Alvarez's work duties required neither discretion nor independent judgment.

105.    Throughout his employment with Defendants, Plaintiff Alvarez regularly worked in excess of 40 hours per week.

106.    From approximately November 2011 until on or about April 2015 and from approximately May 2015 until on or about December 23, 2015, Plaintiff Alvarez worked from approximately 11:00 a.m. until on or about 12:00 a.m. to 12:15 a.m. five to six days a week (typically 65 to 66.25 hours or 78 to 79.5 hours per week).

107.    From approximately January 30, 2017 until on or about October 21, 2017, Plaintiff Alvarez worked from approximately 11:30 a.m. until on or about 11:00 p.m. to 11:15

p.m. four days a week and from approximately 5:00 p.m. until on or about 10:30 p.m. one day a week (typically 51.5 to 52.5 hours per week).

108.     From approximately November 2011 until on or about July 2017, Defendants paid Plaintiff Alvarez his wages in cash.

109.     From approximately August 2017 until on or about October 21, 2017, Defendants paid Plaintiff Alvarez his wages in a combination of cash and check.

110.     From approximately November 2011 until on or about April 2015 and from approximately May 2015 until on or about December 23, 2015, defendants paid Plaintiff Alvarez a fixed salary of $60 per day.

111.     From approximately January 30, 2017 until on or about October 21, 2017, defendants paid Plaintiff Alvarez a fixed salary of $360 per week.

112.     Plaintiff Alvarez's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

113.     For example, until approximately October 2016, Defendants required Plaintiff Alvarez to work an additional 15 minutes four days a week without any additional compensation.

114.     Prior to January 2017, Defendants did not grant Plaintiff Alvarez a meal break or rest period of any kind.

115.     Plaintiff Alvarez was never required to keep track of his time. However, for a period of 2 weeks in February 2017, a waitress kept track of Plaintiff Alvarez's time.

116.     Defendants never provided Plaintiff Alvarez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked. However, Defendants required Plaintiff Alvarez to sign payment slips without providing him with copies.

- 17 -

117.   No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Alvarez regarding wages as required under the FLSA and NYLL.

118.   Plaintiff Alvarez was never notified by the Defendants that his tips were included as an offset for wages.

119.   Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Alvarez's wages.

120.   Defendants never provided Plaintiff Alvarez with each payment of wages a statement of wages, as required by NYLL 195(3).

121.   Defendants never gave any notice to Plaintiff Alvarez, in English or in Spanish (Plaintiff Alvarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

122.   Defendants required Plaintiff Alvarez to purchase "tools of the trade" with his own funds—including three bicycles, two electric bicycles, and $1,000 for bike supplies and maintenance.

*Defendants' General Employment Practices*

123.   Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them the appropriate minimum wage, spread of hours pay and overtime compensation.

124.   At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage, spread of hours and overtime compensation, as required by federal and state laws.

125.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

126.   Defendants habitually required Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

127.   Plaintiffs were victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, not paying them the wages they were owed for the hours they worked.

128.   Defendants required all delivery workers, including Plaintiffs, to perform general non-tipped non-delivery restaurant tasks in addition to their primary duties as delivery workers.

129.   Plaintiffs, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped non-delivery duties.

130.   Plaintiffs and all other delivery workers were not even paid at the required lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the delivery workers' and Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. § 146).

131.   New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he is assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§ 137-3.3 and 137-3.4).

132.   Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

133.    The delivery workers', including Plaintiffs', duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

134.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other delivery workers as tipped employees, but did not pay them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

135.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

136.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

137.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

138.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

139.    All Plaintiffs were paid their wages entirely in cash or in a combination of check and cash.

140.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

141.    Defendants also failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with the statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

142.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours works, including minimum wage, overtime, and spread of hours pay.

143.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the  dates  of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,  salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours works, and the number of overtime hours works, as required by NYLL §195(3).

144.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

145.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

146.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

147.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether  paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular  pay day designated by the employer; the name of the employer; any "doing business as"  names  used by the employer; the physical address of the employer's main office or principal place of  business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

148.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Three E Taste of Thai (the "FLSA Class").

149.    At all relevant times, Plaintiffs and other members of the FLSA Class who are and/or were similarly situated, had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage under the FLSA, and the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

150.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

151.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for employment.

153.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

154.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

155.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

156.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

157.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour works in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

160.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

161.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK MINIMUM WAGE RATE

162.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), control terms and conditions of employment, and determine the rates and methods of any compensation in exchange for employment.

164.     Defendants, in violation of the NYLL, paid Plaintiffs (and the FLSA Class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

165.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

166.     Plaintiffs (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE NEW YORK STATE LABOR LAWS

167.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.     Defendants, in violation of the NYLL and associated rules and regulations, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour they worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor.

169.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

170.     Plaintiffs (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF
## THE NEW YORK COMMISSIONER OF LABOR

171.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.     Defendants failed to pay Plaintiffs (and the FLSA Class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab.  Law §§ 190 *et seq*.  and 650 *et seq*., and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

173.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) an additional hour's pay for each day Plaintiffs' (and the FLSA Class members) spread of hours exceeded ten hours was willful within the meaning of New York Lab.  Law § 663.

174.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW

175.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

176.     Defendants failed to provide Plaintiffs with a written notice, in English or in Spanish (Plaintiffs' primary language), of their rates of pay, regular pay day, and such other information as required by NYLL §195(1).

177.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

178.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

179.    Defendants never provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

180.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorney's fees.

## EIGHTH CAUSE OF ACTION
## RECOVERY OF EQUIPMENT COSTS

181.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

182.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

183.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C.  § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA class members;

(f)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA Class members;

(m)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(p)     Awarding Plaintiffs and the FLSA class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA class members the expenses incurred in this action, including costs and attorney's fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
         November 7, 2017

- 29 -

MICHAEL FAILLACE & ASSOCIATES, P.C.

/s/ Michael A. Faillace

By:    Michael A.  Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       (212) 317-1200
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

November 1, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Ivan Morales Solano

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         01 de noviembre de 2017

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 31, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Tito Alvarez Martinez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      31 de octubre de 2017

*Certified as a minority-owned business in the State of New York*